Michael R. Reese
michael@reeserichman.com
Kim E. Richman
kim@reeserichman.com
**REESE RICHMAN LLP**
875 Sixth Avenue, 18th Floor
New York, New York 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 16 2010 ★

BROOKLYN OFFICE

*Attorneys for Plaintiff and the Proposed Class*

CV 10 - 3772

AMON, J.          BLOOM, M.J.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS YOUNG, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CONOPCO, INC., <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Thomas Young ("Plaintiff"), by and through his undersigned counsel, alleges the following based upon his own personal knowledge and the investigation of his counsel.   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a proposed class action against Conopco, Inc. ("Conopco" or "Defendant") for misleading consumers about the nutritional and health qualities of its soft spread and stick vegetable oil spread products that contained partially hydrogenated vegetable oils and artificial trans fats, namely "I Can't Believe It's Not Butter!"®, Brummel & Brown®, Imperial Margarine®, Shedd's Spread Country Crock® and Willow Run®, as well as other private label products (See Exhibit A)(collectively, "Products").

2.      During the period from January 2000 to the present ("Class Period"), Defendant engaged in a wide-spread marketing campaign to mislead consumers about the nutritional and health qualities of its Products.  Specifically, Defendant made misleading statements that its Products were nutritious, healthy to consume and, consequently, better than similar products such as butter. Defendant was thereby able to command a premium price by deceiving consumers about the healthfulness of its Products and distinguishing itself from similar products.  Defendant was motivated to mislead consumers in order to take away market share from competing products and increase its own profits.

3.      Defendant conveyed this message through a multi-million dollar advertising campaign that included print advertising and television commercials.  For instance, Defendant stated prominently in bold-face type directly on the front and side of its "I Can't Believe It's Not Butter!" containers that it was **Made with a Blend of Nutritious Oils."**

2

4.     This message that its Products are nutritious and healthy, however, is misleading and deceptive because Defendant's Products contain a highly unhealthy, non-nutritious oil known as *partially hydrogenated oil*.

5.     Partially hydrogenated oil is an artificial, man-made substance that has no nutritional value and is known to cause a number of health problems, including coronary disease, heart attacks and death.  In fact, the health problems associated with partially hydrogenated oil are so wide-spread and debilitating that doctors have compared the oil to poison and have advised consumers to avoid any consumption of this oil.  As stated in a review of the book "Poison in the Food – Hydrogenated Oils":

> The U.S. population is being slowly poisoned by a single ingredient deliberately added to the human food supply...the World Health Organization tried to outlaw this ingredient decades ago....hundreds of doctors, researchers and scientists are warning us about the detrimental health effects of this ingredient....[T]his substance causes cancer, birth defects, heart disease, diabetes and many other fatal diseases.
>
> In fact, this substance causes a cell-by-cell failure of the human body by destroying the porosity and flexibility of healthy cell membranes. It's like tearing your body down from the inside out.
>
> What ingredient am I talking about? Hydrogenated oils, of course. For decades, food companies...have lied to use about hydrogenated oils, telling us this disease-causing substance was not merely safe, but actually better for your health than other sources of fat like butter. But today, we know this was nothing more than a global deception, a hijacking of science by the food manufacturers in a blatant attempt to get people to buy their high-profit products like margarine, shortening and snack crackers.

See   http://www.truthpublishing.com/poisonfood_p/yprint-cat21284.htm   (last   visited August 16, 2010).

## JURISDICTION AND VENUE

6.     This court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the class exceed the sum

3

or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and the Defendant.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding trans-fats, occurred within this District. Plaintiff lives in this District and purchased "I Can't Believe It's Not Butter!" in this District.

## APPLICATION OF NEW YORK LAW

8.      New York law applies to the claims and issues asserted herein. Plaintiff seeks damages and equitable relief on behalf of himself and all other United States residents similarly situated, including residents of New York, under the laws of the State of New York.

9.      All of Defendant's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from New York, where Defendant has its principal place of business. Accordingly, New York has significant contacts and/or significant aggregation of contacts to the claims asserted by Plaintiff and all Class members.

10.      New York has a materially greater interest than any other state in regulating unlawful conduct by Conopco, which conducted its unlawful practices out of its principal place of business in New York, and in enforcing the rights and remedies granted to United States consumers, including New York residents, under the New York laws invoked by this complaint. These rights and remedies further strong fundamental public policies of the State of New York.

4

## PARTIES

11.     Plaintiff Thomas Young ("Young" or "Plaintiff") is a citizen of New York, New York because Mr. Young is domiciled in Kings County, New York and has no intention of changing his domicile.  During the Class Period, Mr. Young purchased one or more of Defendant's Products at a premium price within the Class Period from various grocery stores located in Brooklyn, New York.  Plaintiff Young relied on Defendant's misleading and deceptive statements contained on packaging such as "I Can't Believe It's Not Butter!" that represented it was **"Made with a Blend of Nutritious Oils"**, as well as Defendant's widespread advertising and marketing that represented its Products as nutritious and healthy.  Based upon these misrepresentations, Mr. Young reached the conclusion that Defendant's Products were, in fact, healthy and nutritious and relied upon these representations in making his decision to purchase for instance "I Can't Believe It's Not Butter!" at a premium price.  As stated herein, Defendant's representations are misleading and deceptive because Defendant's Products such as "I Can't Believe It's Not Butter!" is not nutritious or healthy as represented because it contains dangerous, unhealthy, non-nutritious partially hydrogenated oil. Plaintiff Young suffered injury in that he would not have paid a premium price for Defendant's Products such as "I Can't Believe It's Not Butter!" had these misrepresentations not been made.

12.     Defendant Conopco, Inc. is a New York corporation with its principal place of business at 390 Park Avenue, New York, New York 10022. Conopco Inc. does business as Unilever.  Unilever is one of the world's largest consumer products companies.  Unilever describes itself on its website as a company "that creates leading food, home and personal care products that make you feel good, look good and get more out of life."

## SUBSTANTIVE ALLEGATIONS

13.     The presence of partially hydrogenated oil in food is a major health concern for all Americans and has been cited as a leading cause of heart disease and death. For example, the Harvard School of Medicine reports that:

> *A 1993 Harvard study strongly supported the hypothesis that intake of partially hydrogenated vegetables oils contributed to the risk of having a heart attack...It lowers levels of high-density lipoprotein (HDL) particles, which scour blood vessels for bad cholesterol and truck it to the liver for disposal. It also promotes inflammation, an overactivity of the immune system that has been implicated in heart disease, stroke, diabetes, and other chronic conditions....This multiple-pronged attack on blood vessels translates into heart disease and death.*

*See*  http://www.hsph.harvard.edu/nutritionsource/nutrition-news/transfats/  (last visited August 16, 2010)

14.     The report: "Poison in the Food – Hydrogenated Oils" also states the dangers of hydrogenated oils as follows:

> Hydrogenated oils are poisons, in the sense that they were never intended for human consumption. They don't exist in nature. They're not found in any natural, raw, unprocessed foods at all. In fact, there is no nutritional requirement whatsoever in the human body for hydrogenated oils....

> These are the diseases and conditions caused by the consumption of hydrogenated oils...Heart disease, breast cancer, prostate cancer, colon cancer...high bad cholesterol/good cholesterol ratio, high blood sugar levels...tumor growth, progression of type 2 diabetes....

Adams, M.; *Poison in the Food: Hydrogenated Oils* (Truth Publishing, 2009).

15.     Conopco is one of the leading producers of soft spreads and stick products.  Soft spreads and stick products are often used as a substitute for butter in cooking, baking and other food preparation. "I Can't Believe It's Not Butter!" is one of Conopco's leading brands.

6

16.     Conopco has engaged in a widespread marketing campaign to portray its Products such as, "I Can't Believe It's Not Butter!", as nutritious, healthy and safe to eat. The Defendant engaged in this misleading and deceptive marketing campaign to charge a premium for its Products, take away market share from other similar products and increase its own profits.

17.     In combination with the misleading claims made on its packaging, Defendant has conducted multi-million dollar, widespread marketing campaigns to deceptively convey the message that its Products are nutritious and healthy. For instance, during the Class Period, Defendant ran a marketing campaign entitled "Big Fat Truth" in which Defendant deceptively portrayed "I Can't Believe It's Not Butter!" as nutritious and healthy. As part of the "Big Fat Truth" marketing campaign, Defendant states on its website that *"our soft spreads are a better nutrition option than butter because they are made with a blend of nutritious oils, including canola and soybean...".* Defendant also proclaims on its website that "I Can't Believe It's Not Butter!" is "made with nutritious plant oils like soybean and canola". *See* http://www.bigfattruth.org/Lies-and-Truths.aspx (last visited June 9, 2009). As stated herein, these statements are deceptive and misleading given that "I Can't Believe Its Not Butter" contains dangerous, non-nutritious, unhealthy partially hydrogenated oil.

18.     Additionally during the Class Period, Defendant also conducted a marketing campaign for its Products called the "Now You Know Better" campaign. The "Now You Know Better" campaign tells consumers that "I Can't Believe It's Not Butter!" for instance is, in fact, better than butter, in that it is purportedly made from a blend of oils that are healthy and nutritious. As stated herein, those statements are deceptive and misleading.

19.     As part of the "Now You Know Better" campaign, Defendant represents that "I Can't Believe It's Not Butter!" is good for a modern, healthy lifestyle and is better than butter and similar products used during the 1950's and early 1960's.

7

20.     For example, as part of the "Now You Know Better" marketing campaign, Defendant has run television commercials featuring an Ozzie and Harriet type-family from the 1950's named the "Buttertons". The television commercial shows in black and white footage the 1950's family eating butter on food and compares this with colorized footage of a healthy modern family using "I Can't Believe It's Not Butter". The "Buttertons" television commercial represents that "I Can't Believe It's Not Butter" is better than butter stating in a voice and/or written text that "I Can't Believe It's Not Butter" is "Made with a Blend of Nutritious Oils" and an "Excellent Source of Omega 3 ALA from Soybean and Canola Oils."

21.     Also as part of the "Now You Know Better" marketing campaign, Defendant has published pictures comparing people dressed in 1950's garb with people in modern clothing. Through these advertisements, Defendant portrays "I Can't Believe It's Not Butter" as healthy and nutritious. Specifically, Defendant states the following in these advertisements (emphasis added):

> Years ago, food was about filling stomachs, not watching waistlines. Flavorful favorites were more important than smart recipes! We worried about making sure food was tasty, and plates were licked clean! However, those favorite meals that we made again and again were often high in saturated fats and cholesterol. ***Smart choices like the blend of nutritious oils in I Can't Believe It's Not Butter!*** weren't an option, and neither was altering the ingredients in the family recipe.

> But modern times call for modern dishes. Today we like to try different recipes and new flavors in our favorite foods. We can still lick our plates, but only if the recipe is made with better ingredients. Now that we know better about saturated fat and cholesterol, we're able to make better choices. ***By including the blend of nutritious oils in I Can't Believe It's Not Butter! you can be confident that you made a smart meal!***

> \*       \*       \*

> Work-life balance seems almost like a fairy tale created by our friends in Human Resources. One-stop-shopping at the local grocery store is

8

necessary to keep our life running smoothly. Somehow we still end up making last minute runs to the store in between work, home, friends, and family errands! Since we know so much better now, shouldn't we have more free time?! Today we have one or two large stores close by to stock up on favorite foods and staples. *This is important because not only do we have to keep life balanced, but we need to keep a healthy balance in our meals too! The blend of nutritious oils in I Can't Believe It's Not Butter! makes balance easy to achieve.*

*        *        *

Parties back in the day were pretty formulaic: finger foods, cocktails and company. Exciting themes were saved for the summer, when tropical drinks and tiki torches were broken out. Gelatin-based salads and deserts were reserved for these special occasions. The table was always set with the good (hand-wash only) crystal. *Butter, higher in saturated fat, would have been set out to accompany the appropriate munchies. Too bad I Can't Believe It's Not Butter! wasn't around! With its blend of nutritious oils, it would have been a much better option to serve guests.*

*        *        *

Birthdays should be celebrated big time! And the older the age, the bigger the parties should be! Forgo the boring dinner party or been-there-done-that-barbeque – there's enough of those hosted all year long. Separate yourself from the rest of the neighborhood by hosting memorable events. Set the tone of your party with a theme, and then set up activities and food to match. *And keep your friends' eating habits in mind. Serve them an excellent source of Omega 3 ALA and a blend of nutritious oils by having I Can't Believe It's Not Butter! on the table.* It's guaranteed that your guests will never forget an event at your house!

**CLASS ALLEGATIONS**

22.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all consumers in the United States who purchased Defendant's Products during the Class Period (the "Class"). Excluded from the Class are officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

9

23.     At this time, Plaintiff does not know the exact number of Class members, however, given the nature of the claims and the number of retail stores selling Defendant's Products nationwide, Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

24.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a.  Whether Defendant labeled, marketed, advertised and/or sold its Products to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning the nutritional and health qualities of its Products;
>
> b.  Whether Defendant omitted and/or misrepresented material facts in connection with the sales of its Products;
>
> c.  Whether Defendant participated in and pursued the common course of conduct complained of herein;
>
> d.  Whether Defendant's labeling, marketing, advertising and/or selling of its Products as healthy and nutritious  constitutes an unfair or deceptive consumer sales practice; and
>
> e.  Whether Defendant was unjustly enriched.

25.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendant's Products in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

26.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class.

10

27.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Civ. R. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

29.   The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

30.   Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Violation of New York General Business Law § 349)

31.   Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

32.   Defendant engaged in false and misleading marketing concerning the nutritional and health qualities of its Products.

33.   As fully alleged above, by advertising, marketing, distribution and/or selling the Product to Plaintiff and other members of the Class, Defendant engaged in, and continues to engage in, deceptive acts and practices.

11

34.     Plaintiff and other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise the healthy nature of its Products. Towards that end, Plaintiff and the Class request an order granting them injunctive relief as follows:   Order disclosures and/or disclaimers on the labeling or advertising of the Defendant's Products and/or remove the partially hydrogenated oil from the ingredients.

35.     Absent injunctive relief, Defendant will continue to manufacture and sell its Products as a healthy and nutritious food product to the detriment of consumers.

36.     In this regard, Defendant has violated, and continues to violate, § 349 of the GBL, which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349 as described above, Plaintiff and other members of the Class have suffered damages, in an amount to be determined at trial.

37.     THEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for judgment as follows:

-       Certification of the Class, certifying Plaintiff as representative of the Class, and designating his counsel as counsel for the Class;

-       A declaration that Defendant has committed the violations alleged herein;

-       For restitution and disgorgement pursuant to, without limitation, the New York General Business Law § 349;

-       For declaratory and injunctive relief pursuant to, without limitation, the New York General Business Law § 349;

-       An award of compensatory damages, the amount of which is to be determined at trial;

12

- For punitive damages;

- For interest at the legal rate on the foregoing sums;

- For costs of suit incurred; and

- For such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 16, 2010                                  Respectfully submitted,

KIM E. RICHMAN

**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
875 Sixth Avenue, 18th Floor
New York, New York 10001
Telephone: (212) 687-8291
Facsimile: (212) 253-4272

*Attorneys for Plaintiff*

13

Exhibit A to Class Action Complaint

| Retailers and Distributors | Product |
|---|---|
| Supervalu (Albertson's/Jewel/Shaw's) | Albertson's Soft<br>Albertson's Little Bit 'o Butter<br>Albertson's Spread<br>Albertson's 64% Spread<br>Albertson's Heart Healthy<br>Albertson's Jewel 64% Spread<br>Shaw's 64% Spread<br>Shaw's Heart Healthy |
| Kroger/Ralph's | ChurnGold<br>Kroger 48% Spread<br>Kroger 40% Value Spread<br>Kroger Soft<br>Kroger Active Lifestyle<br>Kroger Blend<br>Ralph's 40% Value |
| Publix | Publix 39% Spread |
| Aldi | Countryside Creamery 48% Soft Spread<br>Carlini 70% Blend<br>Countryside Creamery 58% Blend<br>Better Balance 64% |
| Associated Wholesale Grocers (AWG) | Best Choice Soft<br>Best Choice 48% Spread<br>Best Choice Butter Blend<br>Always Save 48% Spread |
| Olivio Premium Products | Olivio 60% Soft Spread<br>Olivio Light Spread<br>Olivio 60% Spread |
| Save-A-Lot | Home Churned 48% Spread<br>Home Churned 70% Blend |
| Economy Cash 'N Carry | Elgin 48% Spread |
| H.E. Butt | Hill Country Fare 48% Spread<br>Hill Country Fare 39% Omega3 Spread |
| Target | Market Pantry 48% Spread<br>Market Pantry 64% Spread |
| Wal-Mart | Great Value 50% Spread |